8/27/90

**UNITED STATES CLAIMS COURT**

| | | |
|---|---|---|
| THE NAVAJO NATION,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | ) | No. 508-88L<br><br>**FIRST AMENDED COMPLAINT** |

**INTRODUCTION**

1. Plaintiff and plaintiff's members hold a vested beneficial property right in reservation lands in Arizona within the boundary established by Act of Congress on June 14, 1934 (48 Stat. 960). Defendant has prohibited plaintiff and its members from development and construction on a substantial portion of their land except with the consent of another Indian Tribe, the Hopi Tribe. From August 1982 until after this lawsuit was filed, the Hopi Tribe approved virtually no development in the restricted area. The restrictions imposed by defendant, and its unlawful delegation of federal police power, are a continuing taking of plaintiff's property without just compensation. Alternatively, those actions violate the trust responsibilities owed by defendant to plaintiff as an Indian Tribe and to plaintiff's members as Native Americans, and violate the rights of plaintiff and its members to equal protection of the laws, requiring an award of damages.

**JURISDICTION**

2. This is an action by an Indian Tribe, with a



Exhibit 4 to the United States' Motion for Adoption of Proposed Case Management Plan

governing body duly recognized by the United States, which arises under the Fifth Amendment of the United States Constitution, other laws, and implied contracts of the United States. This Court has jurisdiction pursuant to 28 U.S.C. § 1491 and 28 U.S.C. § 1505.

**PARTIES**

3. Plaintiff Navajo Nation, also known as the Navajo Tribe of Indians, is a federally recognized Indian Tribe which holds, along with and on behalf of its members, vested rights to the lands at issue in this action.

4. Defendant United States is a sovereign nation which, through its legislative and executive branches, owes fiduciary duties to plaintiff and plaintiff's members as Native Americans.

**FIRST CLAIM FOR RELIEF:**
**TAKING WITHOUT JUST COMPENSATION**

5. In 1934, Congress defined the exterior boundaries of the Navajo Indian Reservation in Arizona and permanently withdrew all vacant, unreserved and unappropriated public lands within that boundary "for the benefit of the Navajo and such other Indians as may already be located thereon." Act of June 14, 1934, ch. 521, 48 Stat. 960 ("1934 Act").

6. By the 1934 Act, Congress recognized and vested, for the benefit of plaintiff and its members, a compensable property interest in the 1934 Reservation lands, except for pockets of land on which the Hopi Tribe can prove its members were actually located in 1934.



Exhibit 4 to the United States'
Motion for Adoption of Proposed
Case Management Plan

7. Plaintiff and its members have a significant investment in the lands within the 1934 boundary, including the lands at issue in this case. In 1934 and for several years before that, at the insistence of non-Indian interests, the defendant sought to consolidate Navajo lands within the boundary and non-Indian lands outside the boundary. The defendant required plaintiff and its members to contribute various significant interests in exchange for the 1934 boundary lands. Those interests included, among other things, (1) payment of money, prior to, during and after 1934, for certain sections of the land, (2) abandonment of all claims to Indian allotments outside the boundary, and (3) agreement by individual Navajos living outside the boundary to move inside the boundary. The plaintiff and its members gave up these rights in exchange for a vested right to their property within the 1934 boundary.

8. In 1974, Congress authorized the Hopi Tribe to sue for a determination of its interest, if any, in the reservation established by the 1934 Act. Act of December 22, 1974, Pub. Law No. 93-531, § 8, 88 Stat. 1712, 1715-16 (codified at 25 U.S.C. § 640d-7; "1974 Act"). The first phase of that lawsuit, entitled Masayesva v. Haskie, No. CIV 74-842-PHX-EHC, has been tried and is currently under submission to the United States District Court for the District of Arizona.

9. In 1980, after the federal courts had determined that the Hopi land claim was limited to pockets of land on which the Hopi Tribe could prove its members were actually located in

1934, Congress enacted the following provision:

> Any development of lands in litigation pursuant to section 8 of this Act [25 U.S.C. §640d-7] and further defined as "that portion of the Navajo Reservation lying west of the Executive Order Reservation of 1882 and bounded on the north and south by westerly extensions, to the reservation line, of the northern and southern boundaries of said Executive Order Reservation," shall be carried out only upon the written consent of each tribe except for the limited areas around the village of Moenkopi and around Tuba city. Each such area has been heretofore designated by the Secretary. "Development" as used herein shall mean any new construction or improvement to the property and further includes public work projects, power and water lines, public agency improvements, and associated rights-of-way.

Act of July 8, 1980, Pub. Law No. 96-305, § 3, 94 Stat. 929, 930. In November 1988, Congress amended that provision to permit limited review by the Secretary of the Interior of development proposals denied by the Hopi Tribe. Act of Nov. 16, 1988, Pub. Law No. 100-666, § 6, 102 Stat. 3929, 3932 (codified as amended at 25 U.S.C. § 640d-9(f)). The application of the foregoing statutory provision and the land described therein are referred to herein as the "freeze" and "frozen area," respectively.

10. Notwithstanding the prior court determination that the Hopi Tribe is entitled only to pockets of land on which it can prove its members were actually located in 1934, the area defined by the freeze statute consists of approximately 1,500,000 acres in litigation pursuant to the 1974 Act. That land is inhabited by thousands of Navajo tribal members who hold customary use rights under Navajo law to its possession and use.

11. The freeze statute has been in effect for almost ten years, and was preceded by similar restrictions on development imposed by administrative order in 1966.

12. The freeze by its terms continues in effect until the land at issue in the district court case begun in 1974 is no longer in litigation. Despite efforts by the Navajo Nation to expedite that litigation, trial did not begin until October 1989.

13. Between August 1982 and the filing of this lawsuit, virtually no development was approved by the Hopi Tribe, which opposed even repairs to existing structures. Since the filing of this lawsuit and the amendment of the freeze statute in November 1988, the Hopi Tribe has continued to impose significant barriers to development in the frozen area. Only limited development has been approved by the Secretary of the Interior after Hopi refusals of consent.

14. In all other recent Indian lands settlements, which have involved non-Indian owners and occupants of lands claimed by Indians, defendant has authorized continued ownership and use of claimed lands by the non-Indians and has resolved the adverse Indian claims by other compensation. In this case, when the present owners and occupants are Indian, defendant has severely restricted the use of their land to development and construction approved by those claiming an interest in the land, during the pendency of litigation to determine the validity of those claims. Further, it has done so without providing the normal protections afforded by the substantial prerequisites for



Exhibit 4 to the United States'
Motion for Adoption of Proposed
Case Management Plan

granting a preliminary injunction.

15. The freeze statute, as applied, has prohibited development and construction of new homes, sheds, corrals, roads, water lines, sewers, electrical power lines, schools, businesses, and other critical facilities needed by plaintiff and its members. The application of the freeze statute has also restricted repairs and renovations of, and additions to, existing homes, sheds, corrals, roads, water lines, sewers, electrical power lines, schools, businesses and other facilities owned by plaintiff and its members in the frozen area.

16. The freeze has severely adversely affected, and continues to so affect, the lives of thousands of plaintiff's members who lawfully reside and hold beneficial property interests within the frozen area.

17. The freeze is a taking, in the first instance, because it does not substantially advance any legitimate governmental interest.

18. Alternatively, the freeze is a taking because it is a governmental action which is unreasonably and unnecessarily broad in scope and it has substantially deprived plaintiff and its members of their reasonable investment-backed expectations and of economically viable use of their land.

19. Defendant has failed to undertake any effort, good faith or otherwise, to compensate plaintiff or plaintiff's members for the property interests taken.

20. Defendant's actions constitute a continuing taking

of plaintiff's property requiring just compensation under the Fifth Amendment of the United States Constitution.

**SECOND CLAIM FOR RELIEF:
BREACH OF TRUST**

21. Based on the freeze statute as it has been applied, plaintiff asserts an alternate and distinct claim for breach of trust. Paragraphs 1 through 20 and 35 through 37 are incorporated by reference as though fully set forth herein.

22. Defendant has unique trust obligations under federal Indian law to Native Americans and their Tribes, including plaintiff and its members.

23. Defendant has recognized and vested property rights in plaintiff and its members to the lands at issue in this case. The specific trust property at issue in this case is that part of the frozen area held for the benefit of the plaintiff and its members. The defendant is the trustee, and the plaintiff and its members are the beneficiaries of the trust. There are several sources of the defendant's fiduciary responsibilities.

24. The first sources of defendant's fiduciary responsibilities are implied contracts between defendant and plaintiff. Prior to 1934, at the insistence of non-Indian interests, defendant made extensive efforts to consolidate Indian and non-Indian property interests in northern Arizona. Defendant required the payment of Navajo funds, and federal treasury funds reimbursed from Navajo funds, to purchase tracts of land now in the frozen area in trust for the sole benefit of the plaintiff and its members. The plaintiff and its members assented by their

conduct and provided the consideration requested.

25. In connection with the 1934 Act, which was also developed at the insistence of non-Indian interests, defendant provided for further land consolidation. Defendant required plaintiff and its members to provide consideration in the form of, among other things, (1) money from, or to be reimbursed from, Navajo tribal funds, (2) abandonment of all Navajo claims to Indian allotments outside the 1934 boundary, and (3) agreement by Navajos living outside the boundary to move inside the boundary. Plaintiff and its members assented by their conduct and provided the consideration requested. The Secretary of the Interior, acting as trustee for the Navajo, determined that trading Navajo rights outside the boundary for vested title inside the boundary was in the best interest of plaintiff and its members, and he justified the transfer on that basis.

26. The foregoing implied contracts established fiduciary responsibilities in defendant to protect and preserve those beneficial property rights in the 1934 Reservation, including what is now the frozen area, which defendant agreed to hold in trust for plaintiff and its members.

27. In carrying out its fiduciary responsibilities relative to Indian lands, including the fiduciary duties established by the foregoing implied contracts, defendant has undertaken among other things to provide for (1) development and construction of highways and roads, pursuant to 23 U.S.C. §§ 101 et seq., 23 U.S.C. §§ 201 et seq., 23 U.S.C. § 208 (repealed

1983), 25 U.S.C. § 631 et seq., 25 U.S.C. § 318a, and 25 C.F.R. § 170 et seq.; (2) development and construction of housing, pursuant to 25 U.S.C. §§ 2 and 13, 25 U.S.C. § 631 et seq., 42 U.S.C. §§ 1437, 1437aa, and 1437bb, 42 U.S.C. § 5301 et seq., 24 C.F.R. § 571, 24 C.F.R. Part 905, 25 C.F.R. § 256; (3) development and construction of education facilities, pursuant to 20 U.S.C. § 644, 25 U.S.C. §§ 2 and 13, 25 U.S.C. § 458 et seq., 25 U.S.C. § 631 et seq., and 25 C.F.R. § 277.1; (4) development and construction of sanitation facilities, pursuant to 25 U.S.C. §§ 1601-1602, 25 U.S.C. § 631 et seq., 25 U.S.C. § 1632, and 42 U.S.C. § 2004a; (5) development and construction related to land conservation, pursuant to 25 U.S.C. §§ 2 and 13, 25 U.S.C. § 631 et seq., and 25 C.F.R. Part 167: (6) regulation of rights-of-way, pursuant to 25 U.S.C. § 311-328, and 25 C.F.R. Part 169; (7) regulation and development of leases and businesses, pursuant to 25 U.S.C. §§ 2 and 13, 25 U.S.C. § 391-416, 25 U.S.C. § 631 et seq., and 25 C.F.R. § 141.5-141.15.

28. The second source of defendant's fiduciary responsibilities is the 1934 Act itself. In that Act, the defendant assumed fiduciary responsibilities to protect the beneficial property rights vested therein "for the benefit of the Navajo", excluding pockets of land on which members of the Hopi Tribe were actually located in 1934.

29. The third group of sources of defendant's fiduciary responsibilities are some or all of the federal statutes and regulations listed in paragraph 27, supra, among



Exhibit 4 to the United States' Motion for Adoption of Proposed Case Management Plan

other statutes. Those statutes impose fiduciary duties on defendant, as trustee for plaintiff and its members, to regulate, develop and protect the property rights in the frozen area which defendant holds in trust for them.

30. Defendant has breached its contractual and/or statutory fiduciary responsibilities by, among other things, (1) depriving plaintiff and plaintiff's members of the right to beneficial use, including development and construction, of their property within the frozen area, (2) failing or refusing to carry out the responsibilities defendant has undertaken with regard to regulation, development and protection of the property rights held by plaintiff and its members in the frozen area, and/or (3) failing or refusing to exercise the prudent judgment of a trustee to restrain the Hopi Tribe from imposing unreasonable restrictions on development or to protect plaintiff and its members from such unreasonable restrictions.

31. Defendant has unconstitutionally abdicated its police powers and the fiduciary responsibilities it owes to plaintiff and plaintiff's members to the Hopi Tribe.

32. Defendant's actions described herein constitute violations of the due process clause, the equal protection guarantee, the Indian commerce clause, the property clause, and/or the contract clause of the United States Constitution.

33. Defendant's breaches of its trust responsibilities have caused compensable injury to plaintiff and its members by depriving them of full beneficial use and development of their

property.

**THIRD CLAIM FOR RELIEF:**
**DENIAL OF EQUAL PROTECTION**

34. Plaintiff also asserts an alternate and distinct claim for relief based on the fact that the freeze statute as it has been applied constitutes a denial of equal protection of the laws. Paragraphs 1 through 33 are incorporated by reference as though fully set forth herein.

35. In all other recent Indian lands settlements, which have involved non-Indian owners and occupants of lands claimed by Indians, defendant has authorized continued ownership and use of claimed lands by the non-Indians and has resolved the adverse Indian claims by some other compensation.

36. In this case, when the present owners and occupants are Indian, defendant has severely restricted the use of their land to development and construction approved by those claiming an interest in the land, during the pendency of litigation to determine the validity of those claims. Further, it has done so without providing the normal protections afforded by the substantial prerequisites for granting a preliminary injunction.

37. Defendant's actions and inactions have thereby denied, and continue to deny, plaintiff and its members the equal protection of the laws guaranteed through the Fifth Amendment of the United States Constitution, causing plaintiff and its members compensable injury.



Exhibit 4 to the United States'
Motion for Adoption of Proposed
Case Management Plan

WHEREFORE, plaintiff prays that this Court:

1. Assume jurisdiction of this action.

2. Award plaintiff just compensation or damages in the amount of $50,000,000 or such other amount as may be proven at trial, and

3. Award plaintiff fees, costs and such other relief as the Court deems just.

Respectfully submitted,

Dated: June 28, 1990

DAVID L. NASH, Attorney
Navajo Nation Department of Justice
Navajo-Hopi Legal Services Program
Post Office Box 2990
Tuba City, Navajo Nation (AZ) 86045
(602) 283-4541

Attorney for Plaintiff

Of Counsel:

Eric N. Dahlstrom
Deputy Attorney General
Navajo Nation Department of Justice
Post Office Drawer 2010
Window Rock, Navajo Nation (AZ) 86515
(602) 871-6343

Elizabeth Bardwell, Attorney
Navajo Nation Department of Justice
Navajo-Hopi Legal Services Program
Post Office Box 2990
Tuba City, Navajo Nation (AZ) 86045
(602) 283-4541

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing First Amended Complaint has been mailed to the following counsel by first class mail, postage paid, this 29th day of June, 1990 to:

Edward J. Passarelli, Attorney
United States Department of Justice
Land & Natural Resources Division
Benjamin Franklin Station
P. O. Box 663
Washington, D.C. 20044

Nancy Shepherd
Secretary
NAVAJO-HOPI LEGAL SERVICES PROGRAM