**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE NAVAJO NATION, | ) | |
| | ) | No. 508-88 L |
| Plaintiff, | ) | |
| v. | ) | Senior Judge Eric G. Bruggink |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR ADOPTION OF PROPOSED CASE MANAGEMENT PLAN**

Defendant United States of America respectfully submits this Reply to Plaintiff Navajo Nation's Response to the United States' Motion for Adoption of Proposed Case Management Plan (Doc. 101) ("Plaintiff's Response"). Defendant's Motion identifies important legal issues that should be resolved now through motions practice, before the parties engage in lengthy, and potentially unnecessary, discovery and trial preparation. Defendant believes a number of questions are ready for review, including, but not limited to: (1) whether Plaintiff's claims are time-barred; (2) whether Plaintiff's breach of trust claim is legally viable; and (3) to the extent Plaintiff intends to raise a Penn Central claim,[1/] whether Plaintiff's potential economic harm should be measured by looking to those projects that the Navajo Nation actually proposed during the existence of the Bennett Freeze. Resolution of these issues now will allow the parties to conduct any additional subsequent discovery in a focused manner that will best conserve the Court's and the parties' resources.

[1/] Originally, Plaintiff relied on the liability principles articulated in Agins v. Tiburon, 447 U.S. 225, 260 (1980), a case that the United States Supreme Court expressly overturned. See Lingle v. Chevron, 554 U.S. 528, 545 (2005).

## I. THE FACTS ARE SUFFICIENTLY DEVELOPED FOR THE COURT TO HEAR ARGUMENTS ON THE DISCRETE LEGAL ISSUES THE UNITED STATES HAS RAISED.

In opposing Defendant's proposed case management plan, Plaintiff relies heavily on Judge Andewelt's denial of Defendant's previous summary judgment motion in 1996, and contends that, before the parties exchange expert reports, "there is no reason to believe that pretrial motions can resolve or narrow any of the complex issues in this case." Pl.'s Resp. at 8. The United States disagrees.

First, with regard to the timeliness of their claims, Plaintiff's Response chronicles the history of the Bennett Freeze, discussing its various manifestations as both regulatory and statutory law, and details the district court litigation involving the lands over which the Navajo and Hopi tribes disputed after Congress' attempt to define the exterior boundaries of the Navajo Reservation in 1934. See Pl.'s Resp. at 2-6. In its summation, Plaintiff concedes that conditions on development existed on the disputed lands for approximately forty years. See id. at 6. Although the parties disagree about what legal conclusions should be drawn from this history, there appears to be little difference about when certain actions occurred, including when the Bennett Freeze was instituted and when it ended. The historical record, and especially the judicial actions in the district court, speak for themselves. Moreover, the parties agree that the United States did not conceal its actions and that Plaintiff was aware of the Bennett Freeze at the time of its imposition in the late 1960s. Plaintiff's statute of limitations argument appears to be based on documents already in Plaintiff's possession, and Plaintiff does not articulate any reason to engage in additional open-ended discovery before briefing this issue.

Second, the United States' Motion suggested that Plaintiff's breach of trust claim must be

rejected under Menominee Tribe v. United States, 221 Ct. Cl. 506, 520, 607 F.2d 1335, 1344 (9179) ("[W]hen the valid acts of Congress itself are assailed as unjust, in bad faith, or blind to the Indians' interest – in a case not raising a constitutional claim – we do not believe that Congress intended in sections 1491 or 1505 to repose that unusual authority . . . in this court."), cert. denied, 445 U.S. 950 (1980). Plaintiff appears to agree that this jurisdictional issue involves a legal question, and Plaintiff offers no explanation why additional discovery or trial preparation is necessary to address this issue. Whether Plaintiff states a claim for relief for a breach of trust claim over which this Court has jurisdiction is largely a question of law that the Court can resolve on summary judgment.

Third, the United States' Motion argued that, to the extent Plaintiff intends to articulate a Penn Central takings claim, the Court should resolve how potential economic impact should be measured now, before the parties engage in additional open-ended discovery. The United States believes Plaintiff's economic harm extends, at most, to those written proposals for income-producing public projects that were actually submitted for approval and denied. Although Plaintiff will apparently take a much more expansive view, Plaintiff has never articulated the type of economic harm it allegedly suffered as a result of the Bennett Freeze. While the parties may dispute the ultimate amounts of economic impact, the Court can and should evaluate the parties' arguments about how any potential economic impact should be measured now, before the parties engage in any more discovery and certainly before the parties' experts are tasked with performing complicated and time-consuming appraisals. Any other result would compel the parties to send their experts out into the field with no direction, and ensure that, after months of costly, but unfocused analysis, the parties would arrive at trial litigating very different cases.

## II. CONCLUSION.

The Defendant's Motion identifies a number of issues that can be decided on undisputed facts that are currently in the record. Resolution of these questions would narrow the remaining issues and better focus the parties' efforts by ensuring that the parties employ their limited discovery and expert resources in the most prudent and efficient manner. For the reasons set forth above, Defendant respectfully requests that the Court adopt its proposed case management plan.

Dated: February 13, 2008

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

/s/ William J. Shapiro
WILLIAM J. SHAPIRO
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
501 I Street, Suite 9-700
Sacramento, California 95814
(916) 930-2207 (phone)
(916) 930-2210 (fax)

MARK S. BARRON
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
601 D Street NW, Suite 3127
Washington, DC 20004
(202) 305-0490 (phone)
(202) 305-0506 (fax)

Of Counsel
Daniel Jackson
Solicitor's Office
United States Department of the Interior
Phoenix, Arizona