Realty

IN REPLY REFER TO:

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS
WASHINGTON, D.C. 20242

BUREAU OF INDIAN AFFAIRS
RECEIVED
JUL 12 1966
PHOENIX

JUL 8 - 1966

Mr. Graham E. Holmes

Area Director, Navajo, Window Rock, Arizona 86515

Dear Mr. Holmes:

The conflict between the Navajo and Hopi Tribes over their respective rights in the Executive Order Reservation of 1882 was resolved by Healing v. Jones. The decision in that case unequivocally and finally gave joint and common ownership of the surface and subsurface of the 1882 Executive Order Reservation lying outside of District 6 to the two tribes.

Thus, the ownership and rights in that particular area are forever settled insofar as this Bureau is presently concerned. All actions whatsoever taken by officials of the Bureau (rights-of-way, traders licenses, leases, etc.) which hypothecate in any way the resources of the jointly owned area of the 1882 Executive Order Reservation must be guided by the reality of common ownership.

Another problem which has perplexed the Bureau for years is the administration of that area in Arizona encompassed by the Act of June 14, 1934 (48 Stat. 960), popularly known as the "Boundary Bill of 1934." That Act confirmed to the Navajos, and other Indians residing therein, ownership to certain Executive Order additions made to the Navajo Treaty Reservation of 1868. The Hopi Tribe has long claimed rights in the area encompassed by the "Boundary Bill." These have largely been ignored by the Bureau, and wholly by the Navajo Tribe. Historically, these claims have been confined to the general region of Moencopi and Tuba City and to the country lying between them and the Hopi Villages.

In recent years, the Attorney for the Hopi Indians, acting on their behalf, has asserted the claims of the Hopi and protested actions taken unilaterally by the Navajo Tribe and/or the Bureau

Area Director, Phoenix

RECEIVED
REAL PROP. MGMT.
JUL 13 1966
WRO121

Exhibit 11 to
United States' Motion
DOJ26

in the area referenced without consent of, or for that matter, consultation with, the Hopi Tribe. Leases and permits have been granted throughout the area without regard for any Hopi interest. Only recently, a lease was given to a restaurant operator for a site almost on the doorstep of Moencopi without Hopi consent. Moneys collected from leases, rights-of-way, traders licenses, and other sources have been credited throughout the years solely to the Navajo Tribe.

Now comes an urgent request for a right-of-way, submitted by the Arizona Public Service Corporation, to construct a transmission line across the 1934 "Boundary Bill" area. The application for a right-of-way has been approved by the Navajo Tribe but the Hopi Tribe was not originally made a party. As a consequence, the Hopi Tribe has directed its counsel to take appropriate legal action should a crossing be attempted without the consent of the Hopi Tribe, and to take such other action as needed effectively to administer the rights of the Hopi Indians in the 1934 reservation.

That action stimulated a request to the Solicitor for an opinion as to the extent and nature of Hopi rights in the 1934 "Boundary Bill" area as a guide for proper administration of the area to which the Hopis have historically made their claim. That opinion is attached hereto. It affirms the presence of Hopi interests in the area but leaves unanswered questions about the nature and extent of such rights. It appears likely the answer to that multiple question can be supplied only by the Congress and/or the Federal Courts.

It is evident the Government can no longer continue to administer the area as though it were owned solely by the Navajo Tribe. Without attempting to prejudge, prejudice, or anticipate any future action that might be taken by the tribes in friendly negotiation, or by the Congress finally to adjudicate the respective interests of the tribes, it does not appear reasonable to administer the total of the reservation area in Arizona, confirmed by the Act of June 14, 1934, as though it were jointly owned by the Hopi and Navajo Tribes. Effective administration requires of me a prudent judgment.

Therefore, the following instructions shall apply only to that portion of the Navajo Reservation lying west of the Executive Order Reservation of 1882 and bounded on the north and south by westerly extensions, to the reservation line, of the northern and southern boundaries of the said Executive Order Reservation.

Effective July 1, 1966, an undetermined Hopi interest in the area so delimited shall officially be recognized by placing in a special deposit account all moneys derived from the use and management of the surface and subsurface resources therein. No action shall be taken by an official of the Bureau that does not take full cognizance of the undetermined rights and interests of the Hopi Indians in the said area. This will necessitate formal action by the Hopi as well as by the Navajo Tribe on all those cases which hypothecate the surface or subsurface resources for exploration, mining, rights-of-way, traders, or other use or occupancy authorized by permit, lease, or license.

The same rule will apply to any action which might be taken by the Government for which the law, policies, or regulations require prior tribal consent. By the same token, neither tribe should be permitted unilaterally to take actions within the said area that trespass on the rights of the other.

The administration of the area delimited above will, if long continued, place a financial hardship on both tribes and will magnify the costs and difficulties of administration.

The period of hardships and administrative difficulties would be shortened materially by a friendly confrontation of the tribes, to the end that in face-to-face talks they might agreeably negotiate out what they consider to be their respective interests and thus form the basis for an early and amicable legislative presentation to the Congress of a bill to end confusion of ownership.

In anticipation of Hopi demands for cash reimbursement from the Navajo for whatever their share may prove to be in revenues collected from at least the area described herein, all of which revenues have heretofore been deposited to the credit of the Navajo Tribe, the Area Director for the Navajo should commence a

search for the records of collections and deposits of funds derived from the resources within the area since the date of the enactment of the so-called "Boundary Bill" of June 14, 1934.

Sincerely yours,

(SGD.) ROBERT L. BENNETT
Commissioner

Enclosure