United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
WASHINGTON, D. C. 20245

John A

IN REPLY REFER TO:
Tribal Planning Services

JUL 16 1976

Mr. Peter MacDonald
Chairman
Navajo Nation
Window Rock, Arizona 86515

Dear Chairman MacDonald:

This is in response to Navajo Tribal Council Resolution CJN-36-75 of June 18, 1975 which requests that the freeze on Navajo construction and development in the Western Navajo Agency be lifted.

Since passage of the Resolution, a list of 58 proposed projects and a brief and supplemental memorandum on the legality of the freeze have been submitted on the Navajo Nation's behalf. Although the views of the Hopi Tribe have been sought on several occassions, we have not received a substantive response to date.

Initially, let me say that I am very much aware of the effect of the freeze upon Navajo people who reside in the affected area. For many, their hopes and aspirations for a better standard of living have suffered through no fault of their own. I also recognize the interest the Navajo Nation has in bettering its members' lives and fully appreciate its desire to remove the onerous impact of the freeze.

It is my belief that the decision which I have reached may be better understood by tracing its evolution. As a result of the Associate Solicitor for Indian Affairs' opinion of July 1, 1966, Commissioner Bennett issued a memorandum dated July 8, 1966, which imposed a requirement that Hopi consent be received for all actions which "hypothecate the surface or subsurface resources for exploration, mining, rights-of-way, traders, or other use or occupancy authorized by permit, lease or license" in areas encompassing lands situated in the westerly extension of the 1882 Executive Order area. All money derived from the use or management of the lands was to be deposited in a special account. The funds in the account were to be disbursed when the relative interests of each tribe had been determined. The area affected was modified several times to allow

CONSERVE AMERICA'S ENERGY

*Save Energy and You Serve America!*

RECEIVED
Bureau of Indian Affairs
JUL 22 1976
WRO399
PHOENIX, AZ. 85011

improvements to be made by each tribe in delineated areas without the other's approval. An exception for "public work type projects" was also established for a time which allowed the Commissioner unilaterally to approve proposed projects. However, all exceptions or modifications were eliminated in a memorandum of the Acting Commissioner dated December 28, 1970, and an absolute requirement for the other tribe's approval was reimposed. This requirement stood for more than two years when the Assistant Secretary, in a letter to you dated August 4, 1972, offered an exception allowing Navajo development in an area immediately surrounding Tuba City to proceed without Hopi approval and also permitting Hopi development in the Moencopi vicinity without Navajo approval. Each of the two areas is several square miles in size. Thus, today a Navajo project within the Tuba City area that requires a lease, permit, or right-of-way need only have Navajo tribal approval, with the exception of water wells which still require each tribe's approval. The corollary is the case for a Hopi project in the Moencopi area. But for all projects outside these two areas, the approval of both tribes is required.

With this background in mind I turn to the Nation's request that the freeze be vacated.

The Nation's principal argument in support of vacating the freeze in its entirety, is that it lacks a legal basis because the Hopi Tribe has no interest in the affected area. That, I believe, is a close legal question and one which is now before the Federal District Court in Arizona. The issue of what affect the 1934 Boundary Bill, 48 Stat. 960, had upon the freeze area is, in my view, a matter better left to the District Court for resolution. Furthermore, section 5 of the Navajo-Hopi Settlement Act expressly conferred jurisdiction on the District Court to determine the relative interests of the two tribes in the area affected by the Boundary Bill. If the Court should rule that any portion of the disputed lands belong exclusively to one or the other of the tribes, they will be partitioned accordingly. Thus, any development by the Navajo Nation now, could in retrospect prove unnecessary and wasteful, if the particular lands are eventually partitioned to the Hopi Tribe. The alternative argument presented in the Nation's supplemental memorandum of law dated December 12, 1975, is that even if it be assumed that the Hopi Tribe has some undefined ownership interest in the lands, the Navajos should not be precluded from making improvements because it is an established principle of law that a cotenant out of possession can not thwart a cotenant in possession from making improvements and it is the Navajos who hold possession to all but a small portion of the

disputed area. The Nation's memorandum persuasively argues this point. However, the most recent rights-of-way statute for Indian lands, 25 U.S.C. §§323-328, in some respects modifies this principle when, as here, two tribes are involved, each ostenably having ownership interests in the land. It calls for the consent of tribes organized under the Indian Reorganization Act, 25 U.S.C. §§461-479, in order for the Secretary to grant a right-of-way. The rights-of-way regulations, 25 CFR §161.3(a), require the consent of the tribe for a right-of-way across tribal lands irrespective of whether it is organized under the Reorganization Act.

Although I am unable to go as far as the Nation wishes in lifting the freeze, in order to alleviate its harsh impact during the pendancy of the litigation and unless ordered otherwise, I intend to modify the freeze in the following manner. For any Navajo project proposed in any part of the area in which the Hopi Tribe presently asserts a claim which is within the area presently affected by the freeze, */ I will entertain a request for unilateral approval, on an ad hoc basis, for each project for which the Hopi Tribe has specifically refused to grant its consent or that failed to consider granting its consent within 30 days after being requested to do so.

If the Navajo Tribe is of the opinion that a project is necessary now, it may present the proposal to the Hopi Tribe. If either the Hopi Tribal Council or its authorized executive officers fail to grant their consent or fail to act within 30 days, the proposal may be sent to me directly. I will have my staff here review it and I will endeavor to approve it if there is a substantial necessity demonstrated.

In order to adequately consider a project, I would like to have it presented in as much detail as possible. If a permit, lease or right-of-way is involved, a legal description of the affected lands along with maps, tracings and plans must be submitted. Beyond this, it will be necessary to know the precise need for and impact of the completed project. This is essential because of our obligation to comply with the National Environmental Policy Act, 42 U.S.C. §§4321-4374, in granting approval. Because the basis for this modification is to alleviate deprivations, I would like to have a justification of the project presented. The list of proposed projects already submitted generally falls into several categories: water and sewer lines; electric power supply; housing improvement; upgrading

*/ The Hopi Tribe does not assert any claim to lands in a checkerboard area to the southwest. These lands were purchased for the Navajo Tribe. Thus, no Hopi consent is necessary for any development on these particular lands.

roads, almost exclusively those for school bus routes; and flood control earthen dams. In addition, three new schools are proposed. I might add that I see no need for Hopi consent for some of the 50 projects proposed in the December 16, 1975 letter; such projects as nos. 13, 14 and 20, in my view, would require no approval of the United States because no easement appears to be required, nor are permits or leases involved.

However, in all instances involving leases, permits, or rights-of-way, I would expect a justification of each project, not in technical or engineering, or even cost, terms, but one describing the present conditions of the people concerned and how the completion of the project will, in any measure, change existing conditions.

If a right-of-way is required, the procedure under the regulations, 25 CFR Pt. 161, should be followed. In other words, permission to survey should first be requested from the Navajo Area Director under §161.4. However, the consent of the Hopi Tribe need not be obtained first for surveying as required under §161.3. Once the survey is completed, at the time the proposed project is submitted to the Hopi Tribe for its consent, a copy of the same should be submitted to the Navajo Area Office so that office may assess the environmental effects and the merits of the project and make a recommendation to me.

Any proceeds from leases, permits or compensation for rights-of-ways granted under this measure shall be deposited in the same escrow account into which all other funds have been deposited. The funds will remain there until the respective interests of both tribes have been finally judicially resolved. In a letter dated October 7, 1975, Mr. George Vlassis, on behalf of the Nation, agreed that, subject to council approval, the Nation would stipulate that any projects approved as a result of a modification of the freeze, would not be used as evidence in the present Court proceeding. I will require that such a stipulation be made.

I believe that this procedure provides the pragmatic means for reducing the arbitrarily imposed obstacle to meeting Navajo needs. At the same time, I can take into consideration the Hopi Tribe's interest that may eventually be recognized in the courts. I am hopeful that this measure will be both workable and of direct benefit to Navajo people. Upon receipt of the first proposal, we will make every effort to treat it expeditiously.

Sincerely yours,

(SGD) Morris Thompson

Commissioner of Indian Affairs

cc: Mr. Richard Schifter
Fried, Frank, Harris, Shriver & Kampelman
600 New Hampshire Avenue, N.W.
Washington, D. C. 20008

Mr. George P. Vlassis
Vlassis, Ruzow & Linzer
1545 W. Thomas Road
Phoenix, Arizona 85015

Mr. Jay Edwards, Esq.
507 2nd Street, N.E.
Washington, D. C. 20007

Mr. Samuel Pete
Director
Navajo-Hopi Land Dispute Commission
The Navajo Nation
Window Rock, Arizona 86515

Mr. Abbott Sekequaptewa
Chairman
Hopi Tribal Council
New Oraibi, Arizona 86039

Mr. John Boyden
Boyden, Kennedy, Romney & Howard
Ten East South Temple
Salt Lake City, Utah 84111

BIA, Navajo Area Director
BIA, Phoenix Area Director
BIA, Director, Office of Trust Responsibilities
BIA, Joint-Use Office
BIA, Western Navajo Agency
BIA, Hopi Agency
Solicitor-Indian Affairs, D. Jones